# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

TIMOTHY BRUNETTA,

        Plaintiff,

        v.

EGG HARBOR TOWNSHIP
SCHOOL DISTRICT, *et al.*,

        Defendants.

Civil No. 22-7511 (RMB/EAP)

**OPINION**

**APPEARANCES:**

Timothy Brunetta
2708 Atlantic Avenue
Wildwood, New Jersey 08260

    *Plaintiff,* pro se

Marshall Dennehey Warner Coleman & Goggin
By: Ashley Lauren Toth
15000 Midlantic Drive, Suite 200
Mount Laurel, New Jersey 08054

    *On behalf of Defendant Egg Harbor Township School District*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Egg Harbor Township School District (the "**School District**" or "**Defendant**") pursuant to Federal Rule of Civil Procedure 12(b)(6). [Mot. to Dismiss, Docket No. 5 ("**Motion**"); Br. in Support of Mot. to Dismiss, Docket No. 5-3 ("**Def.'s Br.**").] *Pro se* Plaintiff Timothy Brunetta ("**Plaintiff**") opposes the Motion. [Br. in

Opp'n to Mot. to Dismiss, Docket No. 8 ("**Pl.'s Opp'n**").]   No oral argument was heard pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, the Motion will be **GRANTED**, and the Complaint will be **DISMISSED**, **WITH PREJUDICE**.

## I.      INTRODUCTION

This civil action is Plaintiff's second bite at the apple in this dispute regarding the School District's termination of Plaintiff's employment in February 2022.  Plaintiff contends that the School District violated his civil rights under the Constitution and laws of the United States when it required his compliance with a policy it adopted during the COVID-19 Public Health Emergency that directed certain employees to either provide proof of vaccination or submit to weekly testing.  As discussed below, because Plaintiff has already litigated his claim of wrongful termination based on the same underlying conduct, the Court will dismiss Plaintiff's claims here under New Jersey's entire controversy doctrine.

*      *      *

The Court only recites those facts that are necessary to resolve the pending Motion:

In August 2017, the School District hired Plaintiff as Director of Facilities. [Compl. ¶ 1, Docket No. 1.]  He was an employee in good standing in March 2020 when the COVID-19 pandemic began in the State of New Jersey.  [*Id.* ¶¶ 2–3.]  Given the nature of his role, Plaintiff worked on site, as he could not work remotely.  [*Id.* ¶¶

4–7.]  In August 2021, months after vaccines became publicly available, New Jersey Governor Philip Murphy issued Executive Order No. 253, which directed New Jersey schools to maintain a policy requiring certain "covered employees," like Plaintiff, to (i) provide proof of vaccination or (ii) submit to COVID-19 testing at least once per week.[1]  [*Id.* ¶¶ 14, 16.]  In accordance with this order, the School District adopted such a policy and distributed letters to staff prior to the start of the 2021 school year that advised employees of the new requirements and directed unvaccinated employees to submit to weekly COVID-19 testing.  [*Id.* ¶¶ 16–18.]  The School District informed employees that weekly testing would be considered an accommodation from the mandatory vaccination component of the new policy.  [*Id.* ¶ 17.]

For whatever reason, Plaintiff did not become vaccinated at this time, [*id.* ¶ 22], and after furnishing the School District with his objections to the COVID-19 policy, he refused to submit to weekly testing as well, [*id.* ¶¶ 23–28].  Therefore, on November 29, 2021, the School District informed Plaintiff that he could not return to work due to his vaccination status and refusal to submit to weekly testing.  [*Id.* ¶ 29.]  While Plaintiff remained at home, he apparently was required to use accrued personal time

---

[1]  A copy of Executive Order No. 253 may be found here: https://nj.gov/infobank/eo/056murphy/pdf/EO-253.pdf.  After terminating the Public Health Emergency effective March 7, 2022, on August 15, 2022 Governor Murphy rescinded Executive Order No. 253.  See Executive Order Nos. 292, https://www.nj.gov/infobank/eo/056murphy/pdf/EO-292.pdf, & 302, https://www.nj.gov/infobank/eo/056murphy/pdf/EO-302.pdf.  Pursuant to those orders, however, school districts may continue to maintain policies requiring covered employees to provide proof of vaccination or submit to weekly COVID-19 testing requirements.  Executive Order No. 302, ¶ 2.

off in accordance with School District policy.  [*Id.* ¶¶ 30–31.]  Still, Plaintiff maintained his objections to the COVID-19 policy, and on February 22, 2022, the School District terminated his employment as a result of his failure to comply.  [*Id.* ¶ 36.]

On June 10, 2022, Plaintiff filed suit in the Superior Court of New Jersey, Law Division – Atlantic County, asserting claims of retaliation under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.* ("**NJLAD**"), and the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1, *et seq.* ("**NJCEPA**"), (the "**Underlying Litigation**").[2]  [State Ct. Compl., Docket No. 5-5.] His claims there were premised on his belief that a mandatory vaccinate-or-test policy was unlawful and discriminatory in nature and that his refusal to comply with such policy was a protected activity under the state laws.  [*Id.* ¶¶ 37–39, 42–45.]  Moreover, he alleged that the School District retaliated against him in violation of the NJLAD and NJCEPA by requiring that he remain at home and then by terminating his employment.  [*Id.*]  On November 1, 2022, the state court dismissed Plaintiff's claims for failure to state a viable cause of action.  [Docket No. 5-6.]  Plaintiff did not file an amended complaint thereafter.  [*See* State Ct. Docket, Docket No. 5-7.]  The Underlying Litigation was ultimately closed.  [*Id.*]

---

[2] The matter is *Brunetta v. Egg Harbor Twp. School Dist.*, Case No. ATL-L-1645-22 (N.J. Super. Ct. Law Div. filed June 10, 2022).  The Court observes that Plaintiff's Complaint here is nearly identical to the complaint filed in the Underlying Litigation, where Plaintiff was represented by counsel.

On December 27, 2022, Plaintiff filed the instant action in this Court. [*See generally* Docket.] Here, Plaintiff alleges that the School District's actions violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (Count I) as well as "rights, privileges, and immunities secured under the United States Constitution and laws," including 42 U.S.C. § 1983 (Count II), 42 U.S.C. § 1985 (Count III), and 42 U.S.C. § 1986 (Count IV). [Compl. ¶¶ 39–53, Docket No. 1.] Plaintiff also appears to assert these claims against John Doe Defendants and ABC Entity Defendants. [*See id.*] Plaintiff seeks reinstatement, compensatory damages, and punitive damages. [*Id.*]

On January 20, 2023, the School District filed the pending Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that Plaintiff's claims are barred by New Jersey's entire controversy doctrine and, if not, that they lack a sufficiently alleged factual basis to proceed. [Def.'s Br. 4–10.] In response, Plaintiff argues that the Motion should be denied, and he focuses his Opposition on the efficacy of vaccines in preventing infection and/or transmission of COVID-19, which he submits is questionable. [*See generally* Pl.'s Opp'n.] Plaintiff's Opposition does not respond directly to either of the School District's arguments. [*See id.*] As the Motion is fully briefed, it is ripe for adjudication.

## II.    JURISDICTION

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because they arise under the Constitution and laws of the United States.

## III.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (internal citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)).  A court may "generally consider only the allegations contained in the complaint, exhibits

attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions[.]' "); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.' " *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

## IV.   DISCUSSION

Defendant's principal argument in support of its Motion is that Plaintiff's claims are barred by the entire controversy doctrine.   [Def.'s Br. 4–8.]   Alternatively, it contends that Plaintiff has failed to set forth a sufficient factual basis to support each of his claims.   [*Id.* at 8–10.]   Because the entire controversy doctrine is fully dispositive of this matter, the Court limits its analysis to whether preclusion of Plaintiff's claims is warranted on this basis alone.   *See, e.g.*, *Collas v. Wells Fargo Bank, N.A.*, 2018 WL 6499706, at *2 (D.N.J. Dec. 11, 2018) (Salas, J.) ("Because the [c]ourt rules that all of

[p]laintiff's claims are barred by the entire controversy doctrine, it need not address [d]efendant's other arguments.").

The "entire controversy doctrine" is New Jersey's " 'specific, and idiosyncratic, application of traditional res judicata principles.' " *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886) (3d Cir. 1997)).  Embodying the judgment that "adjudication of a legal controversy should occur in one litigation in only one court," the doctrine requires that all parties to a litigation "present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989) (citation omitted).   Stated differently, the doctrine applies to preclude subsequently asserted claims by a party where they " 'arise from related facts or the same transaction or series of transactions' " as the previously asserted claims. *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)); *see also* N.J. Ct. R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims.").  The goals of the doctrine are to avoid piecemeal decisions, promote judicial efficiency, and assure fairness to all parties with a material interest in an action. *Wadeer*, 110 A.3d at 27; *Olds v. Donnelly*, 696 A.2d 633, 637 (N.J. 1997); *DiTrolio*, 662 A.2d at 502; *Cogdell*, 560 A.2d at 1173.

For the entire controversy doctrine to apply, courts must ensure that the party against whom the doctrine is asserted had a " 'a fair and reasonable opportunity to have fully litigated [its] claim in the original action.' " *Wadeer*, 110 A.3d at 27 (quoting

*DiTrolio*, 662 A.2d at 505).  If the claim had not yet accrued or was unknown, the doctrine should not be applied.  *Id.* (citing *DiTrolio*, 662 A.2d at 505).  Application of the equitable doctrine is " 'left to judicial discretion based on the factual circumstances of individual cases.' " *Bank Leumi USA v. Kloss*, 233 A.3d 536, 541 (N.J. 2020) (quoting *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 203 A.3d 133, 146–47 (N.J. 2019)).  "A court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency." *Dimitrakopoulos*, 203 A.3d at 150.

Just as in New Jersey state courts, the entire controversy doctrine applies in federal courts "where there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991) (citing *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 590–94 (3d Cir. 1989)); *see also Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 141 (3d Cir. 1999) (explaining that "a federal court deciding a federal cause of action is bound by the entire controversy doctrine when determining the effect of a prior New Jersey state[-]court judgment").  Like its "blood relative[]" res judicata, the entire controversy doctrine is an affirmative defense that can be addressed on a motion to dismiss pursuant to Rule 12(b)(6), provided that it is "apparent on the face of the complaint." *Rycoline Prods.*, 109 F.3d at 886.  Still, in making this determination, courts are not precluded from taking notice of matters of public record, *Schmidt*, 770 F.3d at 249, such as the state-court judgment and the

plaintiff's pleading, *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 & n.52 (3d Cir. 2016) (collecting cases).

In consideration of the foregoing principles, the Third Circuit recently summarized the elements required to establish New Jersey's entire controversy doctrine as follows: "(1) the claims against the different parties arise from related facts or the same transaction, (2) the first proceeding produced a final judgment, and (3) the party had a fair and reasonable opportunity to have fully litigated [its] [subsequent] claim[s] in the original action." *Crisafulli v. Branchburg Twp.*, 2023 WL 3845304, at *2 (3d Cir. June 6, 2023) (internal citations and quotation marks omitted).

Here, these conditions are clearly satisfied; the entire controversy doctrine applies to preclude Plaintiff's federal claims. First, Plaintiff's claims are inextricably linked to the same set of operative facts as in his state-court action. [*Compare* Compl. ¶¶ 1–36, Docket No. 1, *with* State Ct. Compl. ¶¶ 1–35, Docket No. 5-5.] In the Underlying Litigation, Plaintiff sued the same party—the School District—for retaliation under the NJLAD and NJCEPA regarding the same underlying conduct—implementation of a vaccinate-or-test policy per Executive Order No. 253 that resulted in Plaintiff's termination for failure to comply. [State Ct. Compl. ¶¶ 23–35.] Similarly, in the above-captioned action, Plaintiff alleges the same conduct, [Compl. ¶¶ 17–36], and claims that the School District subjected him to unequal treatment and otherwise deprived him of "rights, privileges, and immunities under the United States Constitution and laws" in some unspecified way, [*id.* ¶¶ 39–53]. He further claims, without explanation, that the School District engaged in a conspiracy to deprive him

of his constitutional rights. [*Id.* ¶¶ 46–53.] Therefore, because Plaintiff's subsequently asserted claims here arose from the same facts as the Underlying Litigation, the entire controversy doctrine applies, *see DiTrolio*, 662 A.2d at 504 ("the determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts"); his claims thus should have been raised in his original action. *See Rodrigues v. Wells Fargo Bank, N.A.*, 751 F. App'x 312, 316–17 (3d Cir. 2018) (affirming use of doctrine to preclude claims asserted against banks that "could have and should have been included in [plaintiff's] state-court action against those defendants").

Second, the Underlying Litigation culminated in a final decision. On November 1, 2022, the state court dismissed Plaintiff's complaint *without prejudice*. [State Ct. Order, Docket No. 5-6.³]   Plaintiff did not file an amended complaint

---

³ The state court observed as follows:

It is clear to this [c]ourt, this Plaintiff complained of and opposed the Defendant's implementation and enforcement of the Governor's Executive Order [No.] 253. The [c]ourt finds that is not protected activity or a viable cause of action under NJLAD.

. . .

The [c]ourt finds Plaintiff's belief that "Defendant's testing requirements were unlawful and in violation of law and public policy and numerous other federal and state agencies" unreasonable.

. . .

Plaintiff alleges in Count II he complained about the District's implementation and enforcement of Executive Order [No.] 253. This is not a [NJ]CEPA violation.

[State Ct. Order 13–14, Docket No. 5-6.]

thereafter.  [*See* State Ct. Docket, Docket No. 5-7 (exhibit dated Jan. 19, 2023).] Instead, he initiated the instant litigation in this Court on December 27, 2022.  [*See generally* Docket.]  As a result of Plaintiff's conduct, the state-court docket was closed, and the state court's dismissal order became a final decision, which this Court construes—in the totality of the circumstances—as a final adjudication on the merits. *See Hoffman*, 837 F.3d at 279 & n.49 (explaining that when a plaintiff fails to amend his complaint following a dismissal without prejudice within the time provided but subsequently files an identical action in another court, he evinces an intention to "stand on his complaint"—thereby converting the dismissal into a final decision).[4] Accordingly, the entire controversy doctrine is properly invoked here. *See Rycoline Prods.*, 109 F.3d at 888–89 (explaining that the doctrine "does not preclude the initiation of a second litigation before the first action has been concluded").

Third, Plaintiff "had a fair and reasonable opportunity to have fully litigated [his] claim[s] in the original action." *DiTrolio*, 662 A.2d at 505 (citation and quotation

---

[4] Though the state court's dismissal order was initially entered without prejudice, construing the decision as a final adjudication on the merits makes sense under these circumstances.  Where a second action is filed in another forum to manipulate the system or to forum shop, New Jersey courts have applied the entire controversy doctrine to mandate dismissal of the second action—even where the first action remains pending.  *See, e.g.*, *J-M Mfg. Co. v. Phillips & Cohen, LLP*, 129 A.3d 342, 349–50 (N.J. Super. Ct. App. Div. 2015) (noting that while the entire controversy doctrine ordinarily does not *require* dismissing a second action while the first action is *pending*, it should not be mechanistically applied; rather, courts should carefully examine the interests at stake to achieve a just result).  Finding that Plaintiff clearly sought another forum in which to renew his generalized objections to the vaccinate-or-test policy after he encountered an adverse result in the first forum, this Court engages in the same exercise as in *J-M Mfg. Co.* to preclude relitigating this matter.

marks omitted).  Assuming that Plaintiff could, in fact, set forth well-pleaded claims under the Equal Protection Clause, other unspecified provisions of the United States Constitution, and 42 U.S.C. §§ 1983, 1985(3), & 1986, the Court concludes that such claims would have been available to him at the time he sued in state court.[5]  Thus, it is not unfair to require preclusion of Plaintiff's federal claims now where he had sufficient information and opportunity to assert such claims earlier.  *See DiTrolio*, 662 A.2d at 505.  Additionally, the Court finds no reason to conclude that the peculiar nature of the claims prevented their assertion in the original action, *see Wadeer*, 110 A.3d at 30 (explaining that because bad faith claim continued throughout the course of the underlying litigation, fairness permitted such claim to be asserted as a separate and independent claim in later action), or required adjudication in a federal forum, *see Heir v. Del. River Port Auth.*, 218 F. Supp. 2d 627, 633–38 (D.N.J. 2002) (Irenas, J.) (explaining that fairness considerations required application of doctrine to plaintiff's unconstitutional takings claim because plaintiff chose not to avail itself of the available New Jersey forum; a federal forum was not required).  Finally, in any case, Plaintiff

---

[5] Although the Court does not reach the issue of whether Plaintiff has set forth sufficient facts to satisfy the *Twombly/Iqbal* standard, the Court does not hesitate to observe that Plaintiff has exceptionally little to say about the basis for each of his legal claims.  For example, he appears to assert that the School District engaged in a conspiracy to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985(3), [Compl. ¶¶ 46–49], but he fails to identify what action, in particular, deprived him of the equal protection of law (or a right, privilege or immunity under the Constitution) or the two or more individuals who allegedly conspired against him. Thus, the Court does not assume that Plaintiff's claims would have proven meritorious in the original action, only that they would have been appropriately raised at that time.

fails to raise any genuine equitable argument to prevent application of the doctrine. [*See generally* Pl.'s Opp'n.]

Accordingly, because Plaintiff's claims arise from the same set of operative facts as his original suit against the School District, the Underlying Litigation resulted in a final decision on the merits, and Plaintiff had a fair and reasonable opportunity to assert his federal claims in the original action (but chose not to), the Court will apply the entire controversy doctrine and dismiss Plaintiff's Complaint with prejudice.[6]  *See Wadeer*, 110 A.3d at 27; *DiTrolio*, 662 A.2d at 502; *Rycoline Prods.*, 109 F.3d at 888–89.

## V.    CONCLUSION

For the reasons expressed above, the Court will **GRANT** Defendant's Motion and **DISMISS, WITH PREJUDICE**, all claims asserted by Plaintiff.    An accompanying Order shall issue.


**August 16, 2023**                                   **s/Renée Marie Bumb**
Date                                                            Renée Marie Bumb
                                                                    Chief United States District Judge

---

[6] Because the Court will dismiss Plaintiff's claims against the School District based on the entire controversy doctrine, the Court determines that there is no reason not to dismiss the claims asserted against the John Doe and ABC Entity Defendants for the same reason as well.  *See* FED. R. CIV. P. 21 (providing that district court may, at any time, add or drop a party on just terms).